IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HERMINIO VEGA,

                Plaintiff,

      v.

LIZZIE TEGELS and MELINDA DERUS,

                Defendants.

OPINION AND ORDER

17-cv-66-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Herminio Vega, who is incarcerated at the Jackson Correctional Institution in Black River Falls, Wisconsin, is proceeding on a claim that prison officials have failed to allow him visitation with his wife and children until he completes a domestic violence program in which he cannot enroll for up to five years. He contends that the denial of visitation violates his rights under the First, Eighth and Fourteenth Amendments.

In his complaint, plaintiff stated that he was bringing this action on behalf of himself and other similarly situated inmates. However, plaintiff appears to have abandoned his class action claims because he did not file a motion for class certification under Fed. R. Civ. P. 23 or discuss the treatment of any other inmates other than himself. Now before the court is defendants' motion for summary judgment on all of plaintiff's individual claims. Dkt. #22.

1

For the reasons stated below, I am granting defendants' motion for summary judgment and dismissing this case.

From defendants' proposed findings of fact, I find that the following facts are undisputed unless otherwise noted.

UNDISPUTED FACTS

A.  The Parties

Plaintiff Herminio Vega is incarcerated at the Jackson Correctional Institution in Black River Falls, Wisconsin, where defendant Lizzie Tegels has been employed as warden since 2012 and defendant Melinda Derus is the correctional unit supervisor and American with Disabilities Act coordinator.  As warden, Tegels is responsible for the overall administration and operation of the institution under Wis. Stat. § 302.04, including implementing all Department of Corrections policies and directives and legislative and judicial mandates.  Derus's duties include scheduling inmates for their domestic violence programming as recommended during the intake process.

B.  Visitation Policies and Procedures

Department of Adult Institution Policy 309.06.01 sets forth the procedure for requesting visits and the guidelines for visiting inmates in corrections facilities.  To be placed on the approved visitor's list, a visitor must fill out a visitor questionnaire (form #DOC

21AA) and submit it to the institution. If the proposed visitor is a minor, the guardian must sign the form, insuring the guardian's knowledge and permission for the visitation.

As a first step in the approval process, the inmate's social worker reviews the visitor application. Depending on the results of the background check for the proposed visitor, the social worker may approve the request and add the visitor to the inmate's visitor list. Sometimes a social worker may seek further clarification on a visitation request. For example, when the proposed visitor was involved in the crime for which the inmate is incarcerated, fits the inmate's victim profile or is potentially vulnerable and subject to victimization because of the inmate's offense history, the social worker may ask the inmate's Division of Community Corrections' agent or psychologist supervisor for a recommendation. If either one recommends denying the visitation request, the social worker forwards the request to the unit manager of the inmate's housing unit (in this case defendant Derus) for a decision.

Wis. Admin. Code § DOC 309.08(4) sets forth numerous grounds for denying a request for visitation, including:

> (e) The warden has reasonable grounds to believe that the inmate's reintegration into the community or rehabilitation would be hindered;
>
> (f) The warden has reasonable grounds to believe that the inmate's offense history indicates there may be a problem with the proposed visitation;
>
> (g) The warden has reasonable grounds to believe that the proposed visitor may be subjected to victimization; . . .

Defendant Derus is responsible for approving or denying visitation requests only for inmates in her housing unit. She discusses visitor applications recommended for denial with

the social worker and she and the social worker make a final decision.  Derus considers an inmate's criminal history, victim profile and program status when deciding whether to approve or deny visitors.  When an inmate's history and conviction suggest a risk of harm to the visitor, the institution will often deny the visit because of concerns over victimization. In addition, Derus includes the cryptic declaration that "if an inmate has unmet treatment needs, it is generally in the best interests of the inmate and the visitor if the inmate has started and made good progress in domestic violence programming."  Deus Decl., Dkt. #26, at 4.  (I assume that she meant to say that if the inmate had unmet treatment needs, she would generally deny the inmate a visit.)

If the visitor's request is denied, staff will complete a visitor denial form (#DOC 161) and forward it to the visitor and the inmate.  Under Wis. Admin. Code § DOC 309.08(1)(f), inmates can resubmit a proposed visitor's name for reconsideration every six months if they have received a denial, and the proposed visitation request will be reconsidered every time.

C.  Plaintiff's Relevant Criminal History

On March 18, 2016, plaintiff was convicted of two counts "substantial battery–intend bodily harm" in the Circuit Court for Milwaukee County in cases nos. 2015CF4378 and 2015CF5305.  In the first case, plaintiff became angry with a woman living in his house, Amanda L., and slapped her in the face.  He then ordered his wife, Madeline Crespo-Vega, to get him a baseball bat, which he used to beat Amanda in the legs, arm and head until the

bat broke. While plaintiff was out on bail on charges relating to that crime, he punched his wife in the face and head, hit her in the arm with a belt and kicked her several times. Plaintiff also threatened to "cut and dice" his wife "real slowly" and threatened to kill the family of one of the children present if the child did not tell him whether his wife was having an affair or not. He pleaded guilty in the case involving his wife and was sentenced to a total of three years' confinement plus two years' extended supervision; one year of confinement plus one year of extended supervision, concurrent; and three years' confinement plus one year extended supervision, concurrent. The court also ordered plaintiff to successfully complete the "Batterers Intervention Program," continue programming and have no violent contact with Crespo-Vega.

Plaintiff entered prison on March 25, 2016, and was housed at the Dodge Correctional Institution for intake. He was transferred to Jackson Correctional Institution on May 24, 2016.

### D. Plaintiff's Visitor Requests

1. Dodge Correctional Institution

On March 29, 2016, Crespo-Vega submitted three visitor applications: one for plaintiff's minor stepdaughter; one for plaintiff's minor stepson; and one for herself. The applications were forwarded to plaintiff's probation and parole agent, Oscar Garay, who recommended approval of the applications for the children on April 27, 2016. Garay recommended that Crespo-Vega's application be denied because there were reasonable

grounds to believe that she may be subjected to victimization. Garay noted that the application could be reviewed again after plaintiff completed domestic violence counseling. On April 27, 2016, Dodge Correctional Institution accepted Garay's recommendation and notified Crespo-Vega that her request had been denied because the warden had reasonable grounds to believe that she may be subjected to victimization. The notice also stated that Crespo-Vega could appeal the decision in writing to the warden of Dodge Correctional Institution. Neither defendant Tegels nor defendant Derus had any involvement in the April 27, 2016 decision to deny the application.

Plaintiff filed an offender complaint at Dodge Correctional Institution about the denial of his wife's visitor application. Joann Bovee, an inmate complaint examiner, investigated plaintiff's underlying criminal charges further and learned the specific facts surrounding the attack on Crespo-Vega. On May 4, 2016, Bovee recommended dismissal of plaintiff's complaint on the merits. Defendant Tegels had no involvement in reviewing the complaint.

2. Jackson Correctional Institution

Plaintiff's minor daughter, mother, friends, stepdaughter, stepson and niece are on his visiting list at Jackson. Plaintiff has not submitted a DOC 21AA form to the Jackson Correctional Institution requesting that Crespo-Vega be placed on his visitor list. (Plaintiff avers that Crespo-Vega reapplied for placement on his visitor list and called defendant Derus

6

about it, but Crespo-Vega has not submitted an affidavit and there is no other documentary

evidence supporting this fact.)

On June 7, 2016, after being transferred to the Jackson Correctional Institution,

plaintiff sent Derus an interview and information request stating that

> You told me it would take five years to get into [the] Domestic Violence
> program. This is hindering me from seeing my wife and children because I was
> told I couldn't visit with them until I complete the program. Why is it going
> to take me so[] long to get into program.

Derus responded "[d]ue to waiting list. She is your victim and we don't have victim come

in until you receive help." Plaintiff has not yet been admitted to the domestic violence

treatment program because inmates who are closest to being released enter the program first.

(Plaintiff attempts to dispute this fact but he has not submitted any evidence in support of

his contention.) Tegels has encouraged plaintiff to use self-help books from the library,

participate in appropriate leisure activities and secure a work assignment until he is able to

enroll in treatment programming.

According to defendant Derus, when an inmate's prospective visitor is a victim of the

inmate's offense, the institution wants the inmate to be involved in programming prior to

the visit to prevent possible re-victimization. She also believes that in the case of domestic

violence, an inmate who has not received treatment may re-victimize without realizing what

he is doing is wrong and the institution does not want to put the victim in a situation where

she is not safe.

On June 16, 2016, plaintiff filed an offender complaint at the Jackson Correctional

Institution, complaining that the visitor requests from his wife and children had been denied.

An inmate complaint examiner rejected his complaint on June 20, 2016 because it was submitted more than 14 days after the April 27, 2016 event giving rise to the complaint, in violation of Wis. Admin. Code DOC § 310.11(5)(d). Plaintiff appealed and defendant Tegels reviewed the complaint on June 28, 2016, finding that it had been rejected properly.

On July 15, 2016, plaintiff filed a complaint with the Office of the Secretary of the Department of Corrections, saying that he was being denied visitation with his wife and kids and participation in domestic violence programming and that he would have to wait five years to enroll in the program. Tegels responded to the complaint on August 15, 2016, noting plaintiff's past convictions and her concerns with additional victimization of Crespo-Vega and interference with plaintiff's recovery.

According to defendant Tegels, without successful completion of domestic violence programming, plaintiff will not have the tools and understanding of how his prior assaultive behaviors (verbal, non-verbal and physical) have negatively affected his victim and he will be at high risk of continuing his negative patterns and further victimizing Crespo-Vega. Tegels also does not consider Crespo-Vega to be a positive influence on plaintiff because of her past actions in assisting plaintiff's battery of Amanda L. by handing him a baseball bat. In addition, during visitation, only two officers are assigned to work in the visiting room where many visits are taking place simultaneously. Because visitors far outnumber staff assigned to the area, staff cannot always anticipate inappropriate behavior and stop it before it occurs. Although staff and cameras may deter inmates and their visitors from inappropriate behaviors, they offer no guarantee of safety.

8

On September 4, 2016, plaintiff sent defendant Derus an interview and information request, asking "[s]ince you wont allow me a regular visit could I have a non-contact visit. My wife is battling cancer and under a lot of strain and stress." Plaintiff sent defendant Tegels a similar request on September 6. Derus told plaintiff that Jackson did not have no-contact visits, and Tegels told him that the decision to deny his visitation request had been made.

Although the institution has no-contact visitation rooms, they are used only for inmates who are in disciplinary separation or who have trafficked drugs into the institution, and there are no exceptions to that rule. Jackson does not use no-contact visits as an intermediary option for victimization concerns because those rooms do not allow the two supervisory officers to hear the conversation of the inmate and visitor, who are both behind closed doors. According to Tegels, no-contact visits still could pose a threat to both plaintiff and Crespo-Vega because such a visit involves face-to-face contact and the potential for "grooming" and verbal victimization.

Inmates at Jackson can call anyone they are not expressly prohibited from calling. Plaintiff is allowed to place phone calls to his wife and children, and he communicates with Crespo-Vega when her cell phone is active. Plaintiff also may correspond with his wife and children by mail, and for a time, he wrote his wife every day. He also may correspond with anyone via the KIOSK system, which is similar to email messages, so long as the correspondence does not violate federal law, court orders, state statutes or corrections or Jackson policy and procedures. Finally, plaintiff's adjusted release date is November 2021,

and it is likely will be interviewed for a place in the next domestic violence program, which will begin in August 2018.

OPINION

Plaintiff's claims that defendants Tegels and Derus arbitrarily denied him all visitation with his wife and children arise under the freedom of association clause of the First Amendment, the due process clause of the Fourteenth Amendment and the Eighth Amendment. In an initial argument, defendants point out that neither of them was personally involved in the initial decision to deny Crespo-Vega visitation and that plaintiff and Crespo-Vega have not reapplied for visitation at Jackson Correctional Institution. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009) (§ 1983 limits liability to public employees who are personally responsible for constitutional violation); Hildebrandt v. Illinois Department of Natural Resources, 347 F.3d 1014, 1039 (7th Cir. 2003) (defendant must have caused or participated in constitutional violation). Although staff at Dodge Correctional Institution may have made the initial recommendation to deny plaintiff visitation with Crespo-Vega, a reasonable jury could conclude that both Derus and Tegels independently made the same decision after plaintiff had been moved to Jackson. Plaintiff complained to both defendants, who provided their own reasons for denying his wife visitation that were specific to the policies of Jackson and went beyond merely enforcing a decision previously made by plaintiff's probation and parole agent at Dodge. Both Tegels and Derus had the opportunity and the authority to change the initial decision made at

10

Dodge but failed to do so. Accordingly, I will address the merits of plaintiff's constitutional claims.

A. First and Fourteenth Amendments

Generally, prisoners have no independent constitutional right to visitation or to particular forms of visitation, including contact visitation, and prison officials have considerable discretion in determining the time, place, duration and conditions of visitation. Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460 (1989) ("Respondents do not argue—nor can it seriously be contended, in light of our prior cases—that an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause [of the Fourteenth Amendment]."). However, the Supreme Court has held that prisoners retain some right of intimate association while incarcerated, even though it recognized that "freedom of association is among the rights least compatible with incarceration" and "[s]ome curtailment of that freedom must be expected in the prison context." Overton v. Bazzetta, 539 U.S. 126, 131 (2003). See also Easterling v. Thurmer, 880 F.3d 319, 323 and n. 6 (7th Cir. 2018) ("[P]rison officials may violate the Constitution by permanently or arbitrarily denying an inmate visits with family members in disregard of the factors" that balance "the inmate's interests against legitimate penological objectives."); Mayo v. Lane, 867 F.2d 374 (7th Cir. 1989) (assuming that prisoners retain limited constitutional right to associate with family members).

In Overton, the Court held that the constitutionality of a prison policy restricting visitation privileges depended on whether the policy was reasonably related to legitimate penological interests. Overton, 539 U.S. at 132. To determine whether the policy impinged on the prisoner's constitutional rights, the Court applied four factors set forth in Turner v. Safley, 482 U.S. 78 (1987): (1) whether a rational connection exists between the prison policy or regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. Overton, 539 U.S. at 132 (citing Turner, 482 U.S. at 89-91). This standard applies to claims under both the First and Fourteenth Amendments, and the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Id. See also Easterling, 880 F.3d at 323 (prison officials may not restrict inmate's visitation with family members without considering factors in Turner and Overton).

No reasonable jury would conclude that the four factors weigh in plaintiff's favor. Defendants have articulated rational penological reasons for denying plaintiff visits with his wife until he completes the domestic violence program, including protecting Crespo-Vega, the victim of plaintiff's violent crime, from further physical and psychological harm and insuring plaintiff's effective rehabilitation and recovery, which includes a court-ordered domestic violence program. Overton, 539 U.S. at 170 (protecting victims from further harm is legitimate state interest); Turner, 482 U.S. at 89; Block v. Rutherford, 468 U.S. 576, 586

12

(1984) (safety and security are obviously legitimate state interests); <u>Stojanovic v.</u> <u>Humphreys</u>, 309 Fed. Appx. 48, 51 (7th Cir. 2009) ("Safety and security are legitimate penological interests, and this is equally true in the visitation context."). They explain that without successful completion of domestic violence programming, plaintiff will not have the tools and understanding of how his prior assaultive behavior affected Crespo-Vega, creating a high risk that he will continue negative patterns and further victimize her. In addition, only two officers are assigned to work in the visiting room where many visits are taking place at the same time. Because visitors far outnumber staff assigned to the area, staff cannot anticipate inappropriate behavior and stop it before it occurs.

Plaintiff argues that defendants' decision undermines Judge Ellen Brostrom's decision to allow him visitation with his wife while he was incarcerated at the Milwaukee County jail, presumably while awaiting trial and sentencing. Plaintiff has not provided any details or described the circumstances under which these visits were approved or occurred. However, even if plaintiff was allowed to visit with his wife at the jail, that fact is irrelevant in deciding whether defendants had a rational penological reason for denying Crespo-Vega's visitation with plaintiff at the Jackson Correctional Institution after he had been convicted and ordered to participate in domestic violence programming.

Plaintiff contends that defendants could provide him with the option of a "no-contact" visit as a less restrictive alternative to visit with his wife. Defendants dispute this, pointing out that even with a no-contact visit, plaintiff would be engaging in face-to-face contact with the victim of his crime who could be subject to further victimization. They

explain that the no-contact visitation rooms at Jackson are used without exception for inmates who are in disciplinary separation or who have trafficked drugs into the institution and that accommodating plaintiff's request is not feasible because the rooms do not allow the supervisory officers to hear the conversation of the inmate and visitor, who are both behind closed doors. Plaintiff suggests in his brief that there are two types of no-contact visits available at the prison: one for inmates in segregation that occurs in a cell behind closed door and another for inmates in general population that can occur in booths in the main visiting area. However, even if more than one type of no-contact area is available, plaintiff has failed to present any evidence refuting defendants' stated concerns about adequate staffing and monitoring of the conversations that take place in those areas.

Finally, defendants have provided plaintiff with other means of communication, including unlimited phone calls, messaging and mail. Overton, 539 U.S. at 135 (noting these means are acceptable alternatives). Plaintiff questions why an unsupervised phone call is any different from an unsupervised visit behind safety glass, but defendants have reasonably explained that there is no risk of threatening non-verbal communication on a telephone call and that Crespo-Vega can more easily hang up the telephone than leave a visitation room if she feels threatened.

In any event, defendants are not required to use the least restrictive means available for plaintiff's visits with his wife. Overton, 539 U.S. at 135-36 ("Alternatives to visitation need not be ideal, however; they need only be available."). Plaintiff has the burden of demonstrating that there is a regulatory alternative that "fully accommodates the asserted

right while not imposing more than a minimal cost to the valid penological goal." Id. Because plaintiff has not offered sufficient evidence to meet his burden, defendants are entitled to summary judgment on the First and Fourteenth Amendment claims against them.


B. Eighth Amendment

To state a claim under the Eighth Amendment, a prisoner must allege that prison conditions denied him "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). See also Wilson v. Seiter, 501 U.S. 294, 298 (1991); Gillis v. Litscher, 468 F.3d 488, 491 (7th Cir. 2006). In Overton, the Supreme Court held that "[a]n individual claim based on indefinite withdrawal of visitation or denial of procedural safeguards" would not justify invalidation of an entire regulation under the Eighth Amendment. Overton, 539 U.S. at 137. See also Stojanovic, 309 Fed. Appx. at 52 (prison policy that excluded inmate's daughter and niece from visitation list because of his conviction for violent sex offense and admission to raping two children did not state claim that policy amounted to cruel and unusual punishment). However, the Court noted that the arbitrary or permanent denial of an inmate's visitation rights, or the denial of visitation "for a much longer period" than two years, may qualify as a cruel and unusual condition of confinement. Overton, 539 U.S. at 137. Plaintiff has failed to show that he meets this standard.

As discussed above, the decision to deny plaintiff visitation with his wife was not arbitrary because defendants had rational reasons for it. Further, although plaintiff believes

that he will be denied visitation for five years, which would exceed the full length of his incarceration and result in a permanent denial of visitation, he has no evidence to support his assertion apart from his averment that defendant Derus said it could take five years. The undisputed facts show that although there is a waiting list for the domestic violence program and inmates nearing their release dates are given first priority in the program, Tegels estimates that plaintiff is likely to be enrolled in the program in August 2018. Plaintiff has not provided any information to contradict Tegels's most recent estimate. Accordingly, I will grant defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim against them.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Lizzie Tegels and Malinda Derus, dkt. #22, is GRANTED. The clerk of court is directed to entered judgment in favor of defendants and close this case.

Entered this 17th day of July, 2018.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge